## In re GRAND JURY SUBPOENA.

### No. 00–1622.

United States Court of Appeals, Third Circuit.

Argued July 19, 2000.

Filed Aug. 4, 2000.

William J. Winning, (Argued), Scott Magargee, Cozen & O'Connor, Philadelphia, PA; Arthur T. Donato, Jr., Carmen P. Belefonte, Ferrara, Belefonte, McFadden & Ferrara, Media, PA, Attorneys for Appellant.

Michael R. Stiles, United States Attorney, Walter S. Batty, Jr., Assistant United States Attorney, Chief of Appeals, Catherine L. Votaw, Gregory A. Paw, (Argued), Michael A. Schwartz, Assistant United States Attorneys, Office of United States Attorney, Philadelphia, PA, Attorneys for Appellee.

Before SLOVITER, NYGAARD and FUENTES, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this appeal, we are faced with an issue of first impression for this court, whether the target of a grand jury investigation whose attorney has been subpoenaed to give testimony and provide documents to the grand jury that would ordinarily be protected by attorney-client privilege is entitled to review the government's *ex parte* affidavit upon which the District Court relied in deciding that the crime-fraud exception was applicable.

In order to preserve the confidentiality of the proceedings, we will refer to the dramatis personae as the client or the target (the target of the investigation) and the attorney (who is the witness under subpoena). We will also not identify the documents that were subpoenaed, as the legal issue before us is not dependent on the particular documents. We will assume

arguendo that those documents ordinarily would be privileged.

## I.

There is an ongoing extensive federal grand jury investigation into the client's activities in connection with potential violations of the Internal Revenue Code and 18 U.S.C. §§ 371, 1341 and 1951. We were advised at the oral argument that the grand jury investigation has been underway for two years and that numerous witnesses have testified and numerous documents have been produced.

The attorney who was subpoenaed has represented the target for more than a year in connection with the criminal investigation. The government subpoenaed the attorney "as a witness in the investigation" of his client. The attorney moved to quash the grand jury subpoena, asserting that testimony and production of documents concerning the subject matter specified in the subpoena would result in disclosure of privileged attorney-client communications and work product material and would violate his client's Sixth Amendment right to counsel because the attorney's testimony would disqualify him from representing the client-target. The client was given permission to intervene and asserted the same arguments. In response, the government, which had earlier provided the attorney with a *Schofield* affidavit minimally disclosing the purpose of the grand jury investigation, submitted a second *Schofield* affidavit, this one *ex parte*, to establish the applicability here of the crime-fraud exception to the attorney-client privilege. The affidavit details the grand jury investigation, and includes excerpts of testimony and documents obtained during the course of the investigation.

On May 4, 2000, the District Court held a closed hearing on the motion to quash. Counsel for the subpoenaed attorney and his client argued that without recourse to the *ex parte* affidavit, they could not effectively rebut the government's assertion of

the crime-fraud exception, consequently depriving the client of his due process right to be heard. On May 17, 2000, the District Court issued a Memorandum and Order denying the motion to quash and directing the attorney to testify. The court found that "the government's *Schofield* affidavit adequately sets forth the purpose of the grand jury's investigation and that [the attorney's] testimony would be relevant to the investigation." The court further stated "there is no indication that [the attorney's] testimony is sought for an improper purpose. The Court is also convinced that disclosure of the *Schofield* affidavit at this time would compromise the secrecy of the grand jury." Finally, and most pertinent here, the court held that "the *Schofield* affidavit adequately sets forth the basis for invocation of the crime-fraud exception . . . ."

■ The client appeals. He argues that the District Court's procedure of relying on an *ex parte* affidavit to determine that the crime-fraud exception applied was inconsistent with this court's decision in *Haines v. Liggett Group Inc.*, 975 F.2d 81 (3d Cir.1992), and that it violates his due process rights and Sixth Amendment right to counsel. We have jurisdiction under 28 U.S.C. § 1291. The client "appeals as the nonsubpoenaed holder of the attorney-client privilege . . . ." *In re Grand Jury Proceedings (Appeal of FMC Corp.)*, 604 F.2d 798, 801 (3d Cir.1979). We have stated that "[i]t is clear that the attorney client privilege is one that is owned by the client . . . and that he has standing to appeal an order directed to his attorney that affects the privilege." *Id.* We review for abuse of discretion, but we have plenary review over the argument that *Haines* imposes a rule of law.

## II.

### A.

Central to our review of the District Court's decision is an understanding of the

role of the grand jury in the administration of our criminal justice system. The Supreme Court has commented:

> The institution of the grand jury is deeply rooted in Anglo–American history. In England, the grand jury served for centuries both as a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and as a protector of citizens against arbitrary and oppressive governmental action. In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a presentment or indictment of a Grand Jury. The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions.

*United States v. Calandra*, 414 U.S. 338, 342–43, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (citations, quotation, and footnote omitted).

A grand jury proceeding is not an adversary hearing where guilt or innocence is adjudicated but an *ex parte* investigation to determine if there is probable cause to believe a crime has been committed. The grand jury deliberates in secret and acts "independently of either prosecuting attorney or judge . . . ." *United States v. Dionisio*, 410 U.S. 1, 16, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (quotation omitted). Because it is essential to the federal criminal justice system, this investigative body has great powers of investigation and inquisition. The grand jury may generally "compel the production of evidence or testimony of witnesses . . . unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *Calandra*, 414 U.S. at 343, 94 S.Ct. 613.

To prevent abuse of this process, this court has required the government to justify a grand jury subpoena by making "some preliminary showing by affidavit that each item [being subpoenaed] is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and is not sought primarily for another purpose." *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 93 (3d Cir.1973). District courts enjoy considerable discretion in determining whether the *Schofield* affidavit submitted by the government is sufficient to enforce a subpoena. *See In re Grand Jury*, 103 F.3d 1140, 1145 (3d Cir.1997). If the district court decides that the government should present information beyond the minimal *Schofield* requirements, it may use *in camera* proceedings or *ex parte* affidavits to preserve grand jury secrecy, a procedure we have consistently endorsed. *See id.*; *see also United States v. R. Enters., Inc.*, 498 U.S. 292, 302, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991).

The issue came before us recently in *In re the Grand Jury Empaneling of the Special Grand Jury*, 171 F.3d 826 (3d Cir.1999), where witnesses subpoenaed by the grand jury had refused to testify against their rabbi father on religious grounds. They filed a motion to quash the subpoena. The government opposed the motion and submitted a *Schofield* affidavit, *ex parte* and *in camera*, containing details from the grand jury proceedings. The district court reviewed the affidavit *in camera* to protect grand jury secrecy and then denied the motion to quash, ordering the witnesses to testify. On appeal from that order, we held that the district court did not abuse its discretion by refusing to disclose the *ex parte* affidavit. *See id.* at 836.

The proceedings in this case followed a similar pattern. The government provided the subpoenaed attorney with a *Schofield* affidavit containing the limited disclosure required. The attorney filed an affidavit invoking the attorney-client privilege and a motion to quash the subpoena. The client intervened. The government then filed a

supplemental *ex parte* affidavit, i.e., a second *Schofield* affidavit in which it asserted the crime-fraud exception to that privilege. Based on that *ex parte* affidavit, the District Court ruled the crime-fraud exception was applicable.

The Appellant recognizes and does not challenge the general use of *ex parte Schofield* affidavits. Instead, he argues that this case differs from our earlier decisions because the information being subpoenaed is protected by attorney-client privilege. He contends that it is unfair and inequitable for the District Court to have relied solely on an *ex parte* affidavit to decide that the crime-fraud exception applied when he was unable to rebut the government's allegations. This court has not previously considered the use of an *ex parte* affidavit when the subpoenaed witness asserts the attorney-client privilege.

**B.**

The Supreme Court has described the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), the Court explained the purpose of this privilege and the reasons for the crime-fraud exception as follows:

> Although the underlying rationale for the privilege has changed over time, courts long have viewed its central concern as one "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." That purpose, of course, requires that clients be free to "make full disclosure to their attorneys" of past wrongdoings, in order that the client may obtain "the aid of persons having knowledge of the law and skilled in its practice."

> The attorney-client privilege is not without its costs. "Since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—"ceases to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing, but to future wrongdoing.*" It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy" between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" or crime.

*Id.* at 562–63, 109 S.Ct. 2619 (citations omitted).

██ This court has recognized the importance of the attorney-client privilege and has emphasized that the crime-fraud exception applies only when the legal advice "gives direction for the commission of future fraud or crime." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir.1992). Thus, to invoke the exception, the government must make a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, *see id.* at 95, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud, *see, e.g., In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir.1987); *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir.1984). A "prima facie showing" requires presentation of "evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." *Haines*, 975 F.2d at 95–96.

██ The District Court agreed that communications between the attorney-witness and his client-target would "normally be protected by the attorney-client privi-

lege," but held that the crime-fraud exception applied to the communications in this case. In appealing the District Court's order, Appellant argues that the court erred in failing to apply the reasoning of *Haines* when it denied him the right to examine the *ex parte* affidavit. We believe *Haines* does not compel a different result here.

In *Haines*, the plaintiff, who was suing the tobacco industry for wrongful death, sought discovery of certain documents under the crime-fraud exception to the attorney-client privilege. The district court held the exception applied and directed discovery. The tobacco companies petitioned for a writ of mandamus, which this court granted. We held that the appropriate procedure for determining the applicability of the crime-fraud exception in the context of civil litigation requires that, after the party seeking the documents makes a prima facie showing that the exception applies, the party invoking the attorney-client privilege be given an opportunity to rebut. *See id.* at 97. We stated that when a district court weighs the evidence to determine the applicability of the crime-fraud exception to privilege, the party invoking the privilege has the "absolute right to be heard by testimony and argument." *Id.* at 97.

Appellant acknowledges that we made explicit in the *Haines* opinion that the discussion was confined to the civil context and that we intimated "no view as to whether the same procedures should be used in the grand jury context." *Id.* at 97 n. 8. Nevertheless, Appellant argues that if we do not extend the *Haines* holding to the grand jury investigation in this case, "the *Haines* rationale would be rendered meaningless."

This case differs from *Haines* not only because *Haines* was a civil case and this is a criminal one but, even more important, because *Haines* involved adversarial proceedings whereas grand jury proceedings are investigative, and the rules of the game are different. *See, e.g., Calandra,* 414 U.S. at 343, 94 S.Ct. 613.

One of the most significant, if not the most significant, differences stemming from the investigative role of the grand jury is the importance of secrecy, particularly when an investigation is on-going. *See generally* Fed.R.Crim.P. 6(e)(2) (prohibiting disclosure of matters occurring before the grand jury); *see also In re the Grand Jury Empaneling,* 171 F.3d at 836; *In re Grand Jury,* 103 F.3d at 1145. The Supreme Court has given the following reasons for protecting grand jury secrecy:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. John Doe, Inc. I,* 481 U.S. 102, 109 n. 5, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987) (quotation omitted), *quoted in In re Grand Jury Investigation (DiLoreto),* 903 F.2d 180, 183 (3d Cir.1990); *see also Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 219, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) (describing similar reasons for the courts' reluctance "to lift unnecessarily the veil of secrecy from the grand jury"). Moreover, the Supreme Court made clear in *Dionisio,* that saddling a grand jury with minitrials "would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." 410 U.S. at 17, 93 S.Ct. 764.

Given the acknowledged need for secrecy in grand jury proceedings, we reject Appellant's argument that the "unique facts and circumstances in this case," including the length of time the investigation has been pending and the fact that the nature of the investigation has already been made public in several contexts, required the District Court to order disclosure of the government's *ex parte* affidavit. As we have stated, the *ex parte* affidavit includes excerpts of witness testimony and documents obtained during the investigation, which is ongoing. We conclude that the District Court did not abuse its discretion in denying Appellant and/or his attorney access to this information to protect grand jury secrecy.

Our decision is in accord with those of the other federal courts of appeal that have already addressed this precise issue and rejected due process claims made under virtually identical facts. For example, in *In re Grand Jury Subpoenas*, 144 F.3d 653 (10th Cir.1998), the former president and chief executive officer of a hospital who was among various targets of a grand jury investigation appealed the order denying his motion to quash a grand jury subpoena directed to the hospital's counsel, with whom he had a personal attorney-client relationship. The Court of Appeals held there was no abuse of discretion or due process violation by the district court's refusal to disclose the *ex parte* government affidavit from which it determined that the crime-fraud exception applied. *Id.* at 662–63.

Similarly, when faced with the argument by grand jury targets that their due process rights were violated by their inability to inspect and rebut the *ex parte* affidavit submitted by the government in support of its invocation of the crime-fraud exception to the attorney-client privilege, the Second Circuit held that they were properly denied access. *In re John Doe, Inc.*, 13 F.3d 633 (2d Cir.1994). The court also stated that "[i]n light of the district court's legitimate concern that the secrecy of the grand

jury be preserved, its *in camera* examination of the attorney was the most effective method of determining that the crime-fraud exception had been established." *Id.* at 637; *see also In re Grand Jury Subpoena as to C97–216*, 187 F.3d 996 (8th Cir. 1999) (court of appeals found no error and rejected argument that due process was violated by district court's reliance on *ex parte* affidavit to decide government made a threshold showing sufficient to justify an *in camera* hearing to determine whether the crime-fraud exception applied); *In re Grand Jury Proceedings, Thursday Special Grand Jury September Term*, 1991, 33 F.3d 342, 353 (4th Cir.1994) (same general holding); *In re Grand Jury Proceedings*, 867 F.2d 539, 540–41 (9th Cir.1989) (same); *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 57 (7th Cir.1980) (same).

■ We today join the ranks of our sister circuits in holding that it is within the district courts' discretion, and not violative of due process, to rely on an *ex parte* government affidavit to determine that the crime-fraud exception applies and thus compel a target-client's subpoenaed attorney to testify before the grand jury.

■ We do so confident that the district courts will vigorously test the factual and legal bases for any subpoena, and a court which questions the sufficiency of the affidavits has available various avenues of inquiry, among them discovery, *in camera* inspection, additional affidavits and a hearing. *See In re Grand Jury Proceedings (Schofield II)*, 507 F.2d 963, 965 (3d Cir. 1975). In the last analysis, however, we must rely on the district courts' discretion and appellate review of the exercise of that discretion to ensure that the power of the grand jury is not abused while preserving the secrecy that is a necessary element of the grand jury process.

■ Finally, although Appellant has alluded to a denial of his Sixth Amendment right to counsel in his statement of the issues for review, he does not specifically address this claim, cite any authority, or

develop an argument in its support. Nonetheless, we note that *In re Special September 1978 Grand Jury (II)*, the court, after rejecting a due process argument and sustaining a grand jury subpoena issued upon an attorney on the basis of the crime-fraud exception, stated that appellants "cannot claim that their rights to the effective assistance of counsel were infringed because that right does not attach until criminal proceedings with a known defendant have been instituted." 640 F.2d at 64; *see also Davis v. United States*, 512 U.S. 452, 456–57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (Sixth Amendment right to counsel attaches "only at the initiation of adversary criminal proceedings").

Also, the Court of Appeals for the Second Circuit addressed this precise issue in a factually similar case, rejecting the Sixth Amendment violation claim. In *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238 (2d Cir.1986) (en banc), the court stated:

> Before disqualification can even be contemplated, the attorney's testimony must incriminate his client; the grand jury must indict; the government must go forward with the prosecution of the indictment; and ultimately, the attorney must be advised that he will be called as a trial witness against his client. As a court, we decline to speculate that all those events will occur. Apparently [appellant] ignores the possibility that his attorney's grand jury testimony may be exculpatory or neutral, or that the government may decide not to use such information at trial, or that the information may be presented at trial in such a way that the attorney can avoid testifying, or that the trial judge may rule in limine that the information is not admissible, perhaps because its probative force does not justify a resulting disqualification of counsel. Disqualification of counsel is not inevitable.

*Id.* at 245.

The District Court here considered and rejected the Appellant's argument that re-quiring his attorney to testify before the grand jury concerning their attorney-client communication will disqualify the attorney as counsel in connection with the investigation and possible future charges, effectively denying the client his right to choose counsel.

As the District Court held in its opinion, "it is only speculation that [the attorney] may be disqualified from representing [the client] if he testifies before the grand jury ...." We agree and reject the claim of a Sixth Amendment violation.

### III.

For the reasons set forth, we will affirm the District Court's order denying Appellant's motion as an intervenor to quash the grand jury subpoena issued upon his attorney.