913 A.2d 78 (2006)
389 N.J. Super. 281
In the Matter of a GRAND JURY SUBPOENA ISSUED TO Amato A. GALASSO, esq.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 2006.
Decided December 12, 2006.
*82 Marco A. Laracca, Orange, argued the cause for appellant, Amato A. Galasso, Esq. (Bio & Laracca, attorneys; Mr. Laracca, on the brief).
John S. Redden, Chief Assistant Prosecutor, argued the cause for respondent, State of New Jersey (Michael M. Rubbinaccio, Morris County Prosecutor, attorney; Mr. Redden, on the brief).
Before Judges CUFF, WINKELSTEIN and FUENTES.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Appellant was the attorney for the principals of a social club where illegal gambling activity had allegedly been conducted. A Morris County Grand Jury subpoenaed him to testify and produce documents in connection with an investigation of the club. Based in part on a certification of the chief assistant prosecutor submitted ex parte for in camera review, by order of December 16, 2005, the Law Division judge denied appellant's motion to quash the subpoena. By that same order, the judge also denied appellant's motion to obtain access to a copy of the ex parte certification.
On leave granted, appellant claims that the judge erred by considering the ex parte certification without first allowing him access to it; the attorney-client privilege and the attorney work product privilege exempt him from testifying before the grand jury; and the State abused the grand jury process by issuing a subpoena after indictments had been handed down. We disagree and affirm. Given the secrecy underlying the grand jury investigation, the judge was entitled to rely on the ex parte certification without informing appellant of its specific contents. Further, neither the attorney-client privilege nor the attorney work product privilege exempt appellant from testifying before the grand jury, although he may raise the attorney-client privilege in response to specific questions when he testifies. Finally, we agree with the trial judge that issuance of the subpoena after indictments were handed down was not an abuse of the grand jury process.

*83 I. Facts
Some discussion of the facts is necessary to place the issues in context. In 2004, appellant represented a number of persons involved in the formation of a social club, known as the 5th Street Club, LLC (the club), to be located in a warehouse in Dover. His clients included Richard and Jennifer Winstock, Thomas Juskus, and Scott and Robin Furer.[1] At an August 2004 meeting of the Dover Zoning Board of Adjustment, appellant represented the club and its principals with regard to a request for a variance to operate the social club in an area zoned for industrial use. Richard Winstock testified before the Board that the club would be "an amusement and recreation center for adults . . . consisting of business type people . . . after hours executives . . . [and] law enforcement officers." A variety of games would be available to patrons, including billiards, board games, chess, monopoly, and backgammon. Neither Winstock nor appellant informed the Board that the club would be promoting or managing gambling activity. The Board granted the variance; the club allegedly began gambling activities on November 19, 2004.
On December 30, 2004, a detective from the Morris County Prosecutor's Office received a facsimile transmission from appellant, consisting of a three-page letter from appellant to the owners of the club, titled "Opinion Letter regarding 5th Street Club, LLC operation." The letter stated, in part, that "[t]his Opinion Letter is provided in the course of an attorney-client relationship. Publication of this Letter is intended as a limited waiver of such privilege. All other matters protected by the attorney-client and work-product privileges with respect to such relationship are hereby reserved." While the letter stated that the prosecutor's office had requested an opinion regarding the legality of the activities conducted in the club, the State claims it is not aware of such a request.
In the letter, appellant opined that although members of the club had the option to wager on the gaming activities conducted there, such as air hockey, billiards, bridge, chess, darts, foosball, gin rummy, ping pong, pinochle, and poker, the "activities carried out at the 5th Street Club [did] not violate the law, because the Club [was] not acting as a gambling resort." Club members would be permitted to wager on the outcome of games played there as long as "no one, including the Club, act[ed] as a bookmaker," and so long as appellant's "client [did] not profit or receive remuneration for any bet or wager [placed] . . . by the individual members." The letter concluded: "if 5th Street Club, LLC operates [its] establishment in the manner in which it was described to me, the Club is not in violation of New Jersey Law."
On August 30, 2005, the grand jury indicted Richard and Jennifer Winstock, Thomas Juskus, Scott and Robin Furer, and Richard Wagner on multiple counts of conspiracy, official misconduct, perjury, and maintaining a gambling resort. On October 31, 2005, the grand jury issued a subpoena duces tecum and ad testificandum, ordering appellant to appear before it to testify and bring documents in connection with his representation of the club. After appellant moved to quash the subpoena, the State, in opposition, asked the court to review in camera an ex parte certification prepared by the chief assistant prosecutor. Appellant then moved to compel access to the certification. The trial court denied both the motion to quash and motion to compel access. The court *84 granted appellant's request for a stay of the subpoena pending appeal.
After the return of the indictment, Thomas Juskus, the Winstocks, and Richard Wagner raised the defense of "Ignorance or Mistake," pursuant to N.J.S.A. 2C:2-4(c), "inten[ding] to rely on a defense of `Mistake of Law Due to Bad Legal Advice' (said advice as set forth in the opinion letter)." According to the State, counsel for each of the Furers orally informed the chief assistant prosecutor that they both intended to rely on a defense of ignorance or mistake based on advice of counsel, and acknowledged that this defense constituted a waiver of the attorney-client privilege. The Winstocks, Juskus, and Wagner also waived their claims of attorney-client privilege, although new counsel for Juskus later revoked the waiver.

II. Function of the Grand Jury
The grand jury "has always occupied a high place as an instrument of justice" in New Jersey's legal system, serving the dual purpose of determining whether an accused should be subjected to trial, while simultaneously safeguarding citizens against arbitrary, oppressive and unsupported criminal proceedings. In re the Essex County Grand Jury Investigation, 368 N.J.Super. 269, 279-80, 845 A.2d 739 (Law Div.2003) (quoting State v. Del Fino, 100 N.J. 154, 165, 495 A.2d 60 (1985)); see also State v. Sivo, 341 N.J.Super. 302, 325, 775 A.2d 227 (Law Div.2000) ("[t]he grand jury acts as the conscience of the community"). It also operates as an independent investigatory body, free from the constraints of the rules of evidence and procedure. Essex County Grand Jury, supra, 368 N.J.Super. at 280, 845 A.2d 739. The grand jury plays a significant role in the administration of criminal justice, and courts accordingly demonstrate a marked reluctance to intervene in the grand jury process. See ibid. Though judicial supervision of its activities is limited, ibid., the grand jury exercises its powers under the authority and supervision of the judiciary. State v. Arace Bros., 230 N.J.Super. 22, 33-34, 552 A.2d 628 (App.Div.1989).
A grand jury is entitled to engage in an exhaustive investigation. State v. Francis, 385 N.J.Super. 350, 358, 897 A.2d 388 (App.Div.), leave to appeal granted, 188 N.J. 344, 907 A.2d 1006 (2006); see also State v. Johnson, 287 N.J.Super. 247, 259, 670 A.2d 1100 (App.Div.) (when grand jury conducts its investigation, society's interest is best served by a thorough and extensive investigation), certif. denied, 144 N.J. 587, 677 A.2d 759 (1996); In re Grand Jury Subpoena Duces Tecum, 143 N.J.Super. 526, 535, 363 A.2d 936 (Law Div.1976) ("a grand jury is . . . permitted wide latitude in . . . its investigation"). Because the grand jury's task is to inquire into the existence of possible criminal conduct and to return only indictments that are well founded, its "investigative powers are necessarily broad." Francis, supra, 385 N.J.Super. at 358, 897 A.2d 388. Courts grant leeway to a grand jury's decision to conduct an investigation and issue subpoenas; the grand jury itself is the "best judge of what evidence it deems necessary in the pursuit of its investigation." See United States v. Doe, 429 F.3d 450, 453 (3d Cir.2005). "How much information is `enough' is a matter for the judgment of the grand jurors and the prosecution rather than the court." Ibid.
The grand jury's power to subpoena witnesses is essential to its function. Johnson, supra, 287 N.J.Super. at 258, 670 A.2d 1100. The grand jury wields its exceptional powers not on behalf of the prosecutor, but in its capacity as an arm of the court. Arace Bros., supra, 230 N.J.Super. at 33, 552 A.2d 628. A prosecutor possesses *85 no pretrial subpoena power independent of the grand jury. Johnson, supra, 287 N.J.Super. at 258, 670 A.2d 1100; State v. Hilltop Private Nursing Home, Inc., 177 N.J.Super. 377, 389, 426 A.2d 1041 (App. Div.1981) ("[a] prosecutor, unlike a grand jury, does not have the power to order any individual to appear before him"). Nevertheless, the prosecutor directs the investigation and proposes witnesses to be subpoenaed, Johnson, supra, 287 N.J.Super. at 258, 670 A.2d 1100, and issues subpoenas in the grand jury's name. State v. McAllister, 184 N.J. 17, 34-35, 875 A.2d 866 (2005) (stating, "a grand jury does not have to initiate the subpoena process because the prosecutor `must be given leeway in marshaling evidence before a grand jury'" (quoting Hilltop, supra, 177 N.J.Super. at 389, 426 A.2d 1041)).

III. The Ex Parte Certification
Bringing these principles to bear, we turn first to the court's order denying appellant's motion to compel access to the ex parte certification submitted to the court by the State. While we may not disclose the specifics of the certification, in general terms, it describes the nature of the grand jury investigation, details the reasons the State required appellant to testify, and provides facts supporting those reasons. The certification reveals facts pertaining to an ongoing investigation to determine if individuals not yet indicted could be criminally culpable and whether additional charges were warranted. The State believes that publication of the specific facts contained in the certification could impair the investigation.
While no New Jersey case has directly addressed the propriety of the submission of an ex parte certification in this context, in a footnote in In re Grand Jury Subpoenas Duces Tecum Served by the Sussex County Grand Jury, 241 N.J.Super. 18, 23, 574 A.2d 449 (App.Div.1989), we kept sealed "an affidavit [of the prosecutor] . . . describing in great detail much of what had transpired before the grand jury." Although we recognized that the subpoenaed witness's "ability to argue the merits of the issue[] . . . [was] hampered by the fact that the prosecutor's affidavit [was] shrouded in secrecy, . . . we [were] concerned . . . with an ongoing grand jury investigation and, thus, [we concluded that] to unseal the prosecutor's affidavit would substantially damage the grand jury's inquiry." Id. at 24 n. 2, 574 A.2d 449.
Federal "courts of appeals have held that a court may consider the government's ex parte submission in order to preserve the secrecy of the grand jury proceedings and have rejected . . . due process argument[s]" to the contrary. (In re Grand Jury Subpoena as to C97-216, 187 F.3d 996, 998 (8th Cir.1999)); see also In re Grand Jury Subpoena, 223 F.3d 213, 219 (3d Cir.2000) (noting that the Third Circuit decided the issue the same way as the Second, Fourth, Seventh, Eighth, Ninth and Tenth Circuits). These courts have done so "confident that the [trial] courts will vigorously test the factual and legal bases for any subpoena." Ibid. Accordingly, federal district courts enjoy considerable discretion in determining whether an ex parte affidavit submitted by the government is sufficient to enforce a subpoena. Id. at 216. The various means of testing the sufficiency of an ex parte affidavit include discovery, in camera inspection, additional affidavits and a hearing. Id. at 219.
The federal decisions permitting the use of ex parte certifications in the grand jury context are predicated, in significant part, on the secrecy historically afforded grand jury proceedings. New Jersey, too, recognizes the need for secrecy *86 in grand jury proceedings. See R. 3:6-7 ("the requirement as to secrecy of proceedings of the grand jury shall remain as heretofore, and all persons . . . shall be required to take an oath of secrecy before their admission thereto"); see also Daily Journal v. Police Dep't of Vineland, 351 N.J.Super. 110, 124, 797 A.2d 186 (App. Div.) (stating that Rule 3:6-7 "implements the historical requirement as to the secrecy of grand jury proceedings"), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002). "It has long been recognized that the proper function of [the State's] grand jury system depends upon the secrecy of the proceedings." Daily Journal, supra, 351 N.J.Super. at 124, 797 A.2d 186. Secrecy ensures that witnesses will testify fully, without fear of retribution or inducement; ensures that grand jurors will deliberate freely and openly; prevents targets of a grand jury investigation from fleeing; and protects innocent persons whose names have been mentioned in connection with a grand jury investigation, but who have not been, and may never be, charged. Ibid.; Arace Bros., supra, 230 N.J.Super. at 36, 552 A.2d 628.
A grand jury is permitted wide latitude in conducting investigations. In re Grand Jury Subpoena Duces Tecum, supra, 143 N.J.Super. at 535, 363 A.2d 936; see also In re Addonizio, 53 N.J. 107, 126, 248 A.2d 531 (1968). Consequently, the State does not bear a heavy burden to overcome a motion to quash a grand jury subpoena duces tecum. Where the validity of a grand jury subpoena duces tecum is challenged, to overcome the challenge, the State need preliminarily establish only: (1) the existence of a grand jury investigation and (2) the nature and subject matter of that investigation. In re Grand Jury Subpoena Duces Tecum, 167 N.J.Super. 471, 472, 401 A.2d 258 (App.Div.1979). The burden need not be met by affidavit or other formal proofs, but may be satisfied by a simple representation by counsel that a grand jury investigation had been commenced and a recitation of the nature of the investigation. Ibid. The State need only show that the documents subpoenaed bear some possible relationship, however indirect, to the grand jury investigation. Id. at 473, 401 A.2d 258. Where a witness is compelled to produce documents and objects on the grounds that the subpoena is unduly oppressive, the State's burden is to demonstrate the relevance of the requested documents by a "very light and minimal" showing. In re Grand Jury Subpoena Duces Tecum, supra, 143 N.J.Super. at 536, 363 A.2d 936. Though these decisions speak only to a subpoena duces tecum, they demonstrate the limited burden the State carries to justify a subpoena.
In this case, the court inspected the certification in camera and allowed appellant and the defendants to argue their positions regarding the certification and the issuance of the subpoena. This procedure was sufficient to test the sufficiency of the ex parte certification. See In re Grand Jury Subpoena, supra, 223 F.3d at 219 (court has many methods available to test sufficiency of ex parte certification). Indeed, the prosecutor here could have opposed the motion to quash simply on his representations, without the necessity of providing the court with formal proofs. See McAllister, supra, 184 N.J. at 34, 875 A.2d 866.
The reasons for grand jury secrecy are applicable here. The certification describes the nature of the ongoing investigation, provides the names of persons not yet indicted, and gives facts concerning their possible involvement in criminal activities. While nondisclosure of the contents of the certification may hamper appellant's ability to challenge the subpoena, *87 on balance, we agree with the State that disclosure could jeopardize the grand jury's continuing investigation. See In re Grand Jury Proceedings, 867 F.2d 539, 540 (9th Cir.1989) (disclosure of sensitive grand jury materials could seriously impede the function of the grand jury).
A trial court's acceptance of an ex parte certification is a matter of discretion. In re Grand Jury Subpoena, supra, 223 F.3d at 216. Under the facts here, we conclude that the court did not abuse its discretion in permitting the State to submit the ex parte certification.

IV. Appellant's Claims of Privilege

A. Attorney-Client Privilege
We turn next, then, to appellant's claim that his right to raise the attorney-client privilege excuses him from testifying before the grand jury. We disagree.
A blanket motion to quash a subpoena ad testificandum is "extremely inadvisable." Sussex County Grand Jury, supra, 241 N.J.Super. at 34, 574 A.2d 449. An attorney-witness should appear and assert the privilege in response to specific questions. Ibid. Then, the court, rather than counsel, can decide if the privilege applies. Ibid. The burden is on the witness to justify the invocation of the privilege as to each question propounded. Ibid.; see also Horon Holding Corp. v. McKenzie, 341 N.J.Super. 117, 125, 775 A.2d 111 (App.Div.2001) (person asserting privilege bears burden to prove it applies to given communication).
Pursuant to the attorney-client privilege, "communications between [a] lawyer and his client in the course of that relationship and in professional confidence, are privileged." N.J.R.E. 504. Nevertheless, as privileges against compelled disclosure of relevant evidence "run[] counter to the fundamental theory of our judicial system that the fullest disclosure of the facts will best lead to the truth," they are generally construed narrowly in favor of admitting relevant evidence. Kinsella v. Kinsella, 150 N.J. 276, 294, 696 A.2d 556 (1997).
Absent waiver, the attorney, when called as a witness, must assert the privilege on behalf of the client. Aysseh v. Lawn, 186 N.J.Super. 218, 223, 452 A.2d 213 (Ch.Div.1982). The holder of the privilege may waive it, however, if the holder has "without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone." N.J.R.E. 530. The waiver of the attorney-client privilege rests solely with the client. State v. Davis, 116 N.J. 341, 362, 561 A.2d 1082 (1989).
Most jurisdictions, New Jersey among them, recognize implicit waiver of the attorney-client privilege "where the [client] has placed in issue a communication which goes to the heart of the claim in controversy." See Kinsella, supra, 150 N.J. at 300, 696 A.2d 556; see also United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 567, 483 A.2d 821 (App.Div.1984). This way, the client cannot "use the privilege as a sword rather than a shield," and thereby "divulge whatever information is favorable to [the client's] position and assert the privilege to preclude disclosure of the detrimental facts." United Jersey, supra, 196 N.J.Super. at 567, 483 A.2d 821. Waiver of the privilege also occurs if the holder of the privilege discloses "a confidential communication for a purpose outside the scope of the privilege," Sicpa North Am., Inc. v. Donaldson Enters., 179 N.J.Super. 56, 62, 430 A.2d 262 (Law Div. 1981); and, once the holder discloses privileged communications, he has waived the privilege with respect to related privileged information pertaining to the same subject *88 matter. Weingarten v. Weingarten, 234 N.J.Super. 318, 326, 560 A.2d 1243 (App. Div.1989); Sicpa, supra, 179 N.J.Super. at 62, 430 A.2d 262; N.J.R.E. 530.
Here, resolution of the applicability of the privilege should abide a full record of the questions asked to which the privilege has been asserted. If a question before the grand jury, in appellant's opinion, implicates the privilege, he may, at that time, assert it in response to the specific question. That way, a clear record of the questions asked and the basis of appellant's objections may be created. In any event, appellant is required to testify.
Consequently, we do not determine the bounds of the privilege at this time. We leave that for the trial court to determine in the context of the specific questions asked of appellant. The court shall be guided by the parameters within which the privilege may be asserted, as we have outlined.

B. Work Product Privilege
Appellant also claims that the work product privilege should preclude him from testifying before the grand jury. That argument is without merit. Neither the civil work product privilege, R. 4:10-2(c), nor the criminal work product privilege, R. 3:13-3(e), are applicable under the circumstances presented here.
The former applies when a party seeks to discover materials that were prepared in anticipation of litigation. R. 4:10-2(c); Miller v. J.B. Hunt Transport, 339 N.J.Super. 144, 148, 770 A.2d 1288 (App. Div.2001). No evidence exists here to show that the materials appellant is to produce in accordance with the dictates of the subpoena were prepared in anticipation of litigation.
The latter precludes "discovery of a party's work product consisting of internal reports, memoranda or documents made by that party or the party's attorney in connection with the investigation, prosecution or defense of the matter." R. 3:13-3(e). That privilege does not apply here because the documents subpoenaed were not prepared in connection with the investigation or the defense of the pending criminal charges. The State is not seeking "inculpatory evidence uncovered . . . during [appellant's] preparation for trial." State v. Williams, 80 N.J. 472, 479, 404 A.2d 34 (1979). In fact, though appellant was the attorney for the club, he does not represent any of the defendants in connection with the pending criminal charges.

V. Abuse of Grand Jury Process
Finally, we turn to appellant's argument that the State abused the grand jury process by issuing a subpoena to him, not to garner testimony to support the indictment, but only so the State could "take . . . the equivalent of a civil deposition." He maintains that because the grand jury had already issued an indictment, his testimony could serve no permissible purpose, absent a "good-faith showing" by the State of an intention to file a superseding indictment, adding defendants or counts. Though appellant is correct that the prosecutor's post-indictment subpoena power is not as broad as its pre-indictment subpoena power, even after the issuance of an indictment, a grand jury may still serve an investigatory function, and appellant's testimony may serve this investigatory purpose.
To repeat, the grand jury has a broad investigatory function and while prosecutors have no independent subpoena power, they are granted substantial leeway in issuing subpoenas in the grand jury's name. McAllister, supra, 184 N.J. at 34-35, 875 A.2d 866; Francis, supra, 385 N.J.Super. at 358, 897 A.2d 388; Johnson, *89 supra, 287 N.J.Super. at 258-59, 670 A.2d 1100. While a prosecutor may not abuse the grand jury process by issuing subpoenas solely for the purposes of preserving testimony or gathering additional evidence, see Johnson, supra, 287 N.J.Super. at 259-61, 670 A.2d 1100, a prosecutor may still issue subpoenas after an indictment has been issued. As the court in Johnson noted, the defendants there did not, nor could they, argue "that a prosecutor must cease all investigatory efforts once an indictment is issued"; a grand jury can continue an investigation after an indictment has been issued, so long as the purpose of the investigation is to identify further crimes committed by either the already-indicted defendants or unnamed actors not yet indicted. Id. at 259, 670 A.2d 1100. A "grand jury investigation is not fully carried out until every available clue has been run down and all witnesses [have been] examined." Francis, supra, 385 N.J.Super. at 359, 897 A.2d 388.
The Francis court adopted the "dominant purpose" test for determining whether the post-indictment calling of witnesses to testify before a grand jury serves this investigatory function or is improper. Id. at 361, 897 A.2d 388. The State may not call the witness if the "dominant purpose" in doing so is to "gather[] . . . evidence for use in a pending case." Id. at 359, 897 A.2d 388 (quoting United States v. Furrow, 125 F.Supp.2d 1170, 1172 (C.D.Cal.2000)). While the "`use of the grand jury as a means for criminal discovery is prohibited,'" id. at 359, 897 A.2d 388 (quoting Furrow, supra, 125 F.Supp.2d at 1172), it is appropriate for the government to interrogate witnesses on subjects relevant to a continuing grand jury investigation, even when the evidence received may also relate to a pending indictment. Johnson, supra, 287 N.J.Super. at 259, 670 A.2d 1100.
The dominant purpose of the subpoena here is the investigation of criminal activity. The grand jury is investigating the involvement in criminal activities of individuals other than the already charged defendants, as well as the possibility that other crimes have been committed. While one of the purposes of the subpoena may also be to probe the raised defense of mistake of law, which serves a discovery rather than an investigatory function, that purpose is not the dominant purpose of the subpoena.

VI. Summary
In sum, we affirm the trial judge's denial of appellant's motion seeking access to the ex parte certification. We also affirm the court's order denying appellant's motion to quash the subpoena, and requiring appellant to testify before the Morris County Grand Jury, subject, however, to appellant's right to raise the attorney-client privilege in response to specific questions. We vacate the stay of the subpoena.
Affirmed.
NOTES
[1] Although some of appellant's former clients joined in his application in the Law Division to quash the subpoena, none have joined in this appeal.