961 A.2d 1 (2008)
404 N.J. Super. 194
Fernando PINIERO, Paul Dehope, Joseph Soulias, John Morales, Thomas Primo and Dennis Vecchiarelli, Plaintiffs-Respondents,
v.
NEW JERSEY DIVISION OF STATE POLICE, Carson Dunbar, Carl Leisinger, Howard Butt, Vincent Modarelli, William Newsome, Edgar Hess, Kenneth Hess, Frederick Madden, Robert Dunlop, William Meddis, Kim Husband, Barry Bowers, Robert Kilmurray, Louis Toranto, Donald Izzi, Michael Fortino, John Gore, Debra Stone, Anthony Cowell, Gail Mazuco, Defendants-Appellants.
Joseph Santiago, Intervenor-Appellant.
Martin Temple, Marco G. Peralta, and Thomas Suscewicz, Plaintiffs-Respondents,
v.
Peter C. Harvey, Attorney General of The State of New Jersey, The State of New Jersey, Joseph "Rick" Fuentes, Rose Anne Manghisi, Defendants-Appellants.
Joseph J. Santiago, Intervenor-Appellant.
David Kushnir, Thomas Primo, and Dennis Vecchiarelli, Plaintiffs-Respondents,
v.
New Jersey Department of Law and Public Safety, Office of the Attorney General, New Jersey Department of Law and Public Safety, Division of Criminal Justice, New Jersey Department of Law and Public Safety, Division of State Police Defendants-Appellants.
Joseph Santiago, Intervenor-Appellant.
DOCKET NO. A-2507-07T3.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 2008.
Decided December 12, 2008.
*4 Paulette Brown, Madison, argued the cause for appellants (Edwards Angell Palmer & Dodge, attorneys; Ms. Brown, on the brief).
Irving L. Hurwitz, Morristown, argued the cause for intervenor-appellant Joseph Santiago (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Mr. Hurwitz, of counsel and on the brief).
John H. Rittley, Flemington, argued the cause for respondents Martin Temple, Marco G. Peralta and Thomas Suscewicz (Law Offices of John H. Rittley, attorneys; Mr. Rittley, on the brief).
Joseph R. Donahue, Elizabeth, argued the cause for respondents David Kushnir, Thomas Primo and Dennis Vecchiarelli (Brickfield & Donahue, attorneys; Mr. Donahue, on the brief).
William H. Buckman Law Firm, attorneys for respondents Fernando Piniero, Paul DeHope, Joseph Soulias and John Morales (Mr. Buckman, on the brief).
Before Judges WINKELSTEIN, FUENTES and CHAMBERS.
The opinion of the court was delivered by
WINKELSTEIN, P.J.A.D.
This appeal requires us to determine whether the contents of a four-way investigation report of a prospective gubernatorial appointee prepared at the Governor's request is subject to discovery by plaintiffs, New Jersey State troopers, who allege that they were retaliated against because of their involvement in preparing and compiling information for the report.
In 2002, Governor James McGreevey announced his intention to nominate Joseph Santiago, the Police Director of the Newark Police department, as Superintendent of the New Jersey State Police. Accordingly, the State police, at the direction of the Attorney General, conducted an investigation of Santiago's background, commonly referred to as a four-way investigation. See Nero v. Hyland, 76 N.J. 213, 217 n. 1, 224, 386 A.2d 846 (1978). The investigation includes "a check of the F.B.I. `rap sheet,' State Police records, and interviews of all persons with information relevant to the purposes of the check." Id. at 217 n. 1, 386 A.2d 846.
Plaintiffs have sued the State and various State employees, raising constitutional, statutory and common-law claims. Among those claims are plaintiffs' allegations that they were retaliated against for reasons related to Santiago's four-way investigation. Consequently, during the course of discovery, plaintiffs requested the release of the four-way investigation report. Defendants refused plaintiffs' requests, asserting that the four-way investigation report was exempt from public disclosure based on executive privilege. On August 23, 2007, the trial court ordered the release of redacted portions of the report, and subsequently denied defendants' motion for reconsideration.
On leave granted, we reverse. Plaintiffs either have not shown the requisite interest to entitle them to disclosure of the privileged documents that constitute the four-way investigation report, or to the extent that such interest has been demonstrated, their interests do not outweigh the public's interest in keeping the report confidential.

I
Three sets of plaintiffs with varying degrees of involvement in the four-way *5 investigation filed lawsuits alleging that defendants retaliated against them by transferring them to other units and by failing to promote them. The trial court consolidated the lawsuits for discovery.
The "Piniero" plaintiffs, Fernando Piniero, Paul DeHope, Joseph Soulias and John Morales, claim that they were discriminated against in their employment on the basis of race because they refused to engage in racial profiling at the direction of their supervisors. They further assert that they were retaliated against for refusing to engage in illegal and criminal activities, and for informing their superiors "about violations of law and policy within the [New Jersey State Police]." Their claims are based on allegations of a continuing course of conduct that began prior to the Santiago investigation. Although these plaintiffs were not involved in the Santiago investigation, they allege they were retaliated against as a result of their association with the Kushnir plaintiffs.
The "Kushnir" plaintiffs, David Kushnir, Thomas Primo, and Dennis Vecchiarelli, had been assigned to the State Police Organized Crime Unit. They allege that defendants retaliated against them because they reported information received from confidential sources that Santiago had ties to organized crime, and he had been using on-duty Newark police officers to construct a home. They memorialized their findings in a series of "Investigator's Reports" that they submitted to their superiors. These plaintiffs were not involved in the four-way investigation; however, they assert "upon information and belief," that "much of the information" that they uncovered was "simultaneously uncovered by the individuals conducting the Four-Way investigation."
The "Temple" plaintiffs, Martin Temple, Marco Peralta and Thomas Suscewicz, were assigned to the State Police Special Investigations Unit (the SIU), which conducts the four-way investigations. During the course of the Santiago investigation, some of the information was leaked to the press. The Temple plaintiffs allege that Santiago called Temple during the investigation and stated that "someone (in the SIU) was going to pay for leaking information about his background investigation to the press."
In May 2005, the trial court granted the Kushnir plaintiffs' motion to compel discovery, ordering defendants to produce Santiago and former Attorney General Peter Harvey for depositions and to provide "fully responsive answers to plaintiffs' paper discovery demands." Defendants moved to set aside the court's order, claiming it would require disclosure of the "highly confidential internal reports relating to, and the results of, the `four way' check of Santiago." The trial court granted defendants' request to exclude the four-way investigation report without prejudice to plaintiffs to establish a predicate through deposition testimony that demonstrated their need for the report.[1]
After partially completing depositions, plaintiffs made a motion for the results of the four-way investigation. This time the court ordered defendants to produce "the four-way investigation" for use in depositions, subject to the following restrictions: only counsel submitting a certification of confidentiality, which would be contained in a consent protective order, could be present during depositions where the report was used, and plaintiffs themselves could not attend the depositions. The next day, the court filed the consent protective order that it had prepared, setting terms *6 for the use and disclosure of the documents; counsel for all the parties were required to sign the document. Despite the court's order prohibiting plaintiffs from attending depositions in which the four-way investigation would be used, the protective order permitted disclosure of the report to all parties. In addition to attorneys of record and any parties to the action, the protective order permitted disclosure of the "confidential" documents to "experts, investigators or other persons retained by any party," persons who prepared the report, persons to whom the report was addressed or delivered, any "designated representative" of defendants, "who is questioned about the document at a deposition," and any "witness or potential witness" who the attorneys "wish to question" about the report. The court did not specify what documents, out of nearly 4000 that had been produced for in camera review, constituted the "four-way investigation."
We granted defendants leave to appeal. In an unpublished opinion, Piniero v. N.J. Div. of State Police, A-2273-06, 2007 WL 1556290 (App.Div. May 31, 2007), we remanded the case to the trial court to clarify what documents it was referring to in the order requiring the release of the four-way investigation. We also directed the court to review the documents under the balancing test enunciated in Nero, supra, 76 N.J. 213, 386 A.2d 846; and, if the court determined that the four-way investigation report should be released, to redact the identities of confidential sources of information to the extent possible without destroying the utility of the report for plaintiffs' use in depositions.
Following the remand, the trial court delineated the documents that comprised the four-way investigation, redacted them, and ordered their release. It found that plaintiffs demonstrated the requisite interest in the report "in that their participation in the investigation is the alleged impetus for the retaliatory action allegedly taken by Joseph Santiago against them;" and that "the public interest in protecting investigators from retaliation for conducting their duties weighs heavily in allowing plaintiffs an opportunity to establish their case."

II
Against this factual and procedural background, we examine the court's decision to release the four-way investigation report pursuant to plaintiffs' discovery requests. We begin with the well-established principle that requests for discovery are to be liberally construed and accorded the broadest possible latitude to ensure that the ultimate outcome of litigation will depend on the merits in light of the available facts. Shanley & Fisher, P.C. v. Sisselman, 215 N.J.Super. 200, 216, 521 A.2d 872 (App.Div.1987). "Liberal procedures for discovery in preparation for trial are essential to any modern judicial system in which the search for truth in aid of justice is paramount and in which concealment and surprise are not to be tolerated." Id. at 215, 521 A.2d 872 (internal quotation omitted). A trial court has broad discretion in determining the scope of discovery. Axelrod v. CBS Publ'ns, 185 N.J.Super. 359, 372, 448 A.2d 1023 (App.Div.1982). Consequently, the trial court's decisions regarding discovery are normally given deference by a reviewing court, and will not be upset on appeal absent an abuse of discretion or a mistaken understanding of the applicable law. Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559, 691 A.2d 321 (1997).
Nevertheless, the parties' discovery rights are not unlimited. They may obtain discovery "regarding any matter not privileged." R. 4:10-2(a) (emphasis *7 added). Thus, here, we must balance plaintiffs' right to discovery against the "common-law qualified privilege[ ] variously referred to as the `official information,' `governmental,' or `executive' privilege," which, in New Jersey, finds expression in both the statutes and the evidence rules. Loigman v. Kimmelman, 102 N.J. 98, 107, 505 A.2d 958 (1986) (citing N.J.S.A. 2A:84A-27; Evid. R. 34, currently designated as N.J.R.E. 515). Because these privileges run counter to the theory that the fullest disclosure of the facts will best lead to the truth, courts generally construe them narrowly in favor of admitting relevant evidence. In re Grand Jury Subpoena Issued to Galasso, 389 N.J.Super. 281, 297, 913 A.2d 78 (App.Div.2006). Thus, the executive privilege is not absolute. River Edge Sav. & Loan Ass'n v. Hyland, 165 N.J.Super. 540, 544, 398 A.2d 912 (App.Div.), certif. denied, 81 N.J. 58, 404 A.2d 1157 (1979). Courts must balance the interests of the litigants and the public. McClain v. Coll. Hosp., 99 N.J. 346, 353, 492 A.2d 991 (1985); see also Loigman, supra, 102 N.J. at 104-05, 107-08, 505 A.2d 958 (explaining the balancing of interests in which a court must engage before allowing a party access to confidential government documents).
Determining the appropriate balance of public and private interests requires the trial judge to conduct an "`exquisite weighing process.'" Id. at 108, 505 A.2d 958 (quoting Beck v. Bluestein, 194 N.J.Super. 247, 263, 476 A.2d 842 (App. Div.1984)). "[I]n civil cases in which disclosure is sought not to aid in the defense of criminal charges, but for the purpose of asserting claims for money damages, the interests of the State in maintaining . . . confidentiality . . . are entitled to a greater degree of respect." Cashen v. Spann, 66 N.J. 541, 556, 334 A.2d 8 (1975), cert. denied, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46.
The principles guiding the release of a four-way investigation were expounded in Nero, supra, 76 N.J. 213, 386 A.2d 846. The plaintiff, Nero, was a prospective gubernatorial appointee. Id. at 216, 386 A.2d 846. The governor chose not to appoint him to the position because the Attorney General was concerned with information revealed by the four-way investigation. Id. at 217, 386 A.2d 846. When the plaintiff, "presumably in order to defend his reputation," demanded disclosure of the report produced as a result of the investigation, the Attorney General considered it confidential and would not release it. Id. at 217, 386 A.2d 846.
The Court found that the report fell within the common law definition of a public record. Id. at 221-23, 386 A.2d 846. Under the common law rule, a citizen is entitled to inspect public documents provided he or she "shows the requisite interest" in them. Id. at 222, 386 A.2d 846 (quoting Ferry v. Williams, 41 N.J.L. 332, 334 (Sup.Ct.1879)). While the Court recognized that the plaintiff in Nero had a cognizable interest in the report, the existence of his interest alone did not give him an absolute right to the document. Id. at 223, 386 A.2d 846. The plaintiff's interest in disclosure had to be balanced against the public's interest in the confidentiality of the documents. Id. at 224, 386 A.2d 846. After balancing the competing interests, the Court found the public interest in the confidentiality of the four-way investigation outweighed the nominee's interest in defending his reputation. Id. at 226, 386 A.2d 846.
The Court explained that the main reason for the effectiveness of the investigation is that those offering information are assured anonymity, and disclosure of the report would have a "chilling effect," *8 preventing persons with knowledge of the appointee's unsuitability for office from coming forward. Id. at 224, 386 A.2d 846. Thus, confidentiality is vital because it both protects government sources of information and enhances the effectiveness of investigative techniques. Id. at 225, 386 A.2d 846. The public also has a vital interest in the effectiveness of the Governor's decision-making process; the privilege protects that interest by insulating the Governor's decision-making process, allowing the Governor to make decisions "freely and effectively under a mantle of privacy and security." Id. at 225-26, 386 A.2d 846.
Nero, however, "does not . . . sustain an absolute privilege of secrecy for all. . . investigative materials" in the possession of the Attorney General. Loigman, supra, 102 N.J. at 103-04, 505 A.2d 958. The Nero "opinion made clear . . . that there [is] no fixed rule for determining whether disclosure is appropriate." Id. at 104, 505 A.2d 958. Consequently, a court should balance, in each case, the individual's right to the information against the public interest in the confidentiality of the information. Ibid. The balancing process must be concretely focused upon the relative interests of the parties in relation to the specific materials requested. McClain, supra, 99 N.J. at 361, 492 A.2d 991.
In Loigman, supra, in which the Court was called upon to "balance the citizen's right of access to official information with the government's need for confidentiality in the conduct of law enforcement investigations," 102 N.J. at 101, 505 A.2d 958, the Court suggested factors a trial court should consider in performing its balancing function:
(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decision-making will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.
[Id. at 113, 505 A.2d 958.]

III
Within the framework of these tenets, we now turn to the individual groups of plaintiffs to evaluate their entitlement to disclosure of the documents that constitute the four-way investigation. In permitting discovery of the four-way investigation, the trial court grouped all plaintiffs together, and found that they had the requisite interest to warrant its release. The court further found that "the public interest in protecting investigators from retaliation for conducting their duties weighs heavily in allowing plaintiffs an opportunity to establish their case." We disagree with the court's reasoning for two primary reasons. First, the court mistakenly grouped all plaintiffs together; the separate groups of plaintiffs have different, if any, interests in the four-way investigation. Second, although we do not disagree with the court's conclusion that the public has an interest in protecting investigators from retaliation for doing their job, the analysis does not end there. That interest must be balanced *9 against the effect disclosure would have on the Governor's right to make decisions "freely and effectively under a mantle of privacy and security," see Nero, supra, 76 N.J. at 226, 386 A.2d 846, as well as the effect disclosure would have on the individuals interviewed who are asked to give opinions as to the fitness and character of the nominee. That said, we now turn to how these principles are applied to each set of plaintiffs.

A. The Piniero Plaintiffs
The Piniero plaintiffs were not involved in the Santiago investigation. They did not report any information to superiors related to Santiago that was incorporated in the four-way investigation. Their complaint alleges that they were discriminated against in their employment on the basis of race because they refused to engage in racial profiling at the direction of their supervisors; and that they were retaliated against for refusing to engage in illegal and criminal activities and for informing their superiors "about violations of law and policy within the [New Jersey State Police]." They have demonstrated no nexus between their allegations of retaliation and the gathering of information for the four-way investigation or the fruits of that investigation. They simply claim that they were retaliated against because of their "association" with the Kushnir plaintiffs, who themselves were not involved in the four-way investigation. That does not constitute the requisite interest necessary to gain access to the four-way investigation.

B. The Kushnir Plaintiffs
The Kushnir plaintiffs have also failed to demonstrate the requisite interest in the four-way investigation to justify its release to them. These plaintiffs were not involved in the four-way investigation. They allege that defendants retaliated against them because they reported information received from confidential sources that Santiago had ties to organized crime, and he had been using on-duty Newark police officers to construct a home. These plaintiffs memorialized their findings in a series of "Investigator' Reports" that they submitted to their superiors. Their assertion that, "upon information and belief," "much of the information" that they uncovered was "simultaneously uncovered by the individuals conducting the Four-Way investigation," may give them a cognizable interest in their own reports, but it does not give them the requisite interest to justify release of the four-way investigation.
They further argue that they "require the information contained in the Four-Way investigation to properly depose witnesses and to develop their theory that Santiago retaliated against [them] after learning of the information contained in the report." They have not, however, explained how the information in the four-way investigation, which, as noted, does not include the reports that they prepared, will assist them in deposing witnesses or developing their retaliation theory.
Furthermore, at least in part, these plaintiffs base their arguments on the theory that Santiago had knowledge of the contents of the four-way investigation, which led him to retaliate against them. The evidence does not show, however, that Santiago was aware of what the four-way investigation report stated or who the report identified as sources of information. To the contrary, at his deposition, Santiago denied ever seeing the report. Although Santiago was briefed by former Attorney General Harvey before his appearance before the Senate Judiciary Committee, Harvey only "identified the areas that were explored during the four-way investigation," so that Santiago would be aware of potential questions related to these areas *10 during the confirmation process. On this record, to assume that the contents of the four-way investigation will assist the Kushnir plaintiffs in preparing for depositions and developing their theory of retaliation is nothing more than speculation.
To the extent, however, that the Kushnir plaintiffs have demonstrated a requisite interest in the four-way investigation, for the same reasons as we will discuss with regard to the Temple plaintiffs, infra at pp. 210-12, 961 A.2d at pp. 10-11, the Kushnir plaintiffs' need for disclosure does not outweigh the public's need for confidentiality.

C. The Temple Plaintiffs
The Temple plaintiffs were assigned to the SIU, which conducts the four-way investigations. Temple was the chief investigator assigned to Santiago's investigation; Suscewicz was his direct supervisor. As the preparers of the four-way investigation report, the Temple plaintiffs have demonstrated a requisite interest in the report; their interest, however, does not outweigh the vital public interest in ensuring anonymity and confidentiality for individuals who disclose information as part of the gubernatorial appointment process.
These plaintiffs allege that Santiago stated "that someone [in the SIU] was going to pay for leaking information about his background investigation to the press." They assert that Santiago followed through with that threat by reassigning them to different positions. They argue that the four-way investigation report contains Santiago's direct threat to Temple. They also claim that the report will refute defendants' claims that plaintiffs were the source of leaks to the press; it will refresh their recollections as to facts supporting their claims; and the report itself forms the basis of defendants' alleged retaliation against them.
The primary flaw in the Temple plaintiffs' argument for release of the four-way investigation is that their request is based principally on their claim that they were retaliated against because the information in the report was leaked to the press; they do not claim with any specificity that they were retaliated against because of what their investigation disclosed. Put simply, they have failed to show how the contents of the report would lead to discoverable information regarding who, if anyone, in the SIU, leaked the information in the report to the press.
The Temple plaintiffs also claim that they require the report to refresh their recollections. They suggest that the report will allow them "to booster their credibility" and to "testify accurately." Plaintiffs do not explain, however, how the contents of the report will refresh their ability to testify with regard to the allegations that they were retaliated against because the report was leaked.
Nevertheless, even if the contents of the four-way investigation could somehow refresh the Temple plaintiffs' recollections as to what occurred when they were conducting the investigation, that benefit to plaintiffs in pursuing their civil suit is not sufficient to overcome the potential adverse effects that disclosure could have upon persons who provide confidential information. Simply because information is discoverable does not overcome the executive privilege.
Individuals provide confidential information in reliance upon their identities not being disclosed. Disclosure would discourage individuals from providing confidential information that a governor may require to properly evaluate potential nominees for public office. As the Nero Court explained, the primary reason for the effectiveness of the investigative process is that those offering information are assured anonymity. *11 76 N.J. at 224, 386 A.2d 846. Persons interviewed during the four-way investigation provide not only factual data, but also, in some cases, their personal opinions as to the nominee's fitness and character. Knowing that these opinions could become public would discourage many individuals from speaking candidly to investigators, if in fact they choose to speak to them at all. The disclosure of the investigation report would have a chilling effect, preventing persons with knowledge of the appointee's unsuitability for office from coming forward. Ibid.
Here, on balance, plaintiffs have not overcome the vital public interest in confidentiality of the four-way investigation. The sources of the information obtained in the investigation must be confident that their identities will not be subject to public disclosure, that what they said will remain confidential, and that they will not be subject to retaliation for speaking honestly and freely.
We add too that we have reviewed the documents as redacted by the trial court, but conclude that even as redacted, the information must remain confidential. Even with the redactions, the identities of the persons who provided the information would be easily discovered. Simply redacting their names and references to their positions or relationships with Santiago is insufficient to protect the identity of the individuals who supplied the confidential information from disclosure.
We are mindful, as the trial court correctly pointed out, that the investigators must be free from the threat of retaliation by their superiors for conducting the four-way investigation. If not, their ability to collect the information needed by the Governor to evaluate potential nominees would be substantially impaired. That concern is, however, significantly diminished, in that what occurred here, State police officers investigating the individual who would become their "boss," appears to have been a one-time-only event. The parties have represented to this court that measures have been taken by State officials so that State police will no longer investigate gubernatorial nominees for Superintendent. Thus, although protecting the investigators from retaliation is a valid consideration, it does not outweigh the vital public interest in keeping the investigation confidential.
In sum, we conclude that the trial court abused its discretion by releasing the report. To the extent that plaintiffs have an interest in the report, their interests do not outweigh the potential chilling effect disclosure of the report would have upon persons with knowledge of a potential appointee's unsuitability for office from coming forward. Accordingly, we reverse the order permitting disclosure of the four-way investigation report.
Reversed and remanded.
NOTES
[1] All proceedings before the trial court were conducted under seal. Consequently, plaintiffs have not been provided with the four-way investigation report.